IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **STEPHEN COLE-HATCHARD**, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | |
| **GEORGE HOEHMANN**, as Supervisor | ) | **COMPLAINT FOR** |
| for the Town of Clarkstown, New York and | ) | **DECLARATORY JUDGMENT,** |
| in his individual Capacity; | ) | **INJUNCTIVE RELIEF, AND** |
| **FRANK BORELLI**, as Councilman and | ) | **DAMAGES** |
| Deputy Supervisor for the Town of | ) | |
| Clarkstown, New York and in his individual | ) | |
| capacity; **STEPHANIE HAUSNER**, as | ) | **CIVIL ACTION NO.** |
| Councilwoman for the Town of Clarkstown, | ) | |
| New York and in her individual capacity; | ) | _____ |
| **JOHN J. NOTO**, as Councilman for the | ) | |
| Town of Clarkstown, New York and in his | ) | |
| individual capacity;  **ADRIENNE D.** | ) | **JURY TRIAL DEMANDED** |
| **CAREY**, as Councilwoman for the Town of | ) | |
| Clarkstown, New York and in her individual | ) | |
| capacity; **TOWN OF CLARKSTOWN,** | ) | |
| **NEW YORK;** and **TOWN BOARD OF** | ) | |
| **THE TOWN CLARKSTOWN, NEW** | ) | |
| **YORK;** | ) | |
| | ) | |
| *Defendants*. | ) | |
| | ) | |

STEPHEN COLE-HATCHARD, Plaintiff, by his Attorneys, as and for his Complaint

against the Defendants, respectfully states, on information and belief, as follows:

## NATURE OF ACTION:

1.      STEPHEN COLE-HATCHARD brings this action under Title 42 U.S.C. § 1983 and Title 28 U.S.C. §§ 2201 and 2202 to obtain relief that will vindicate his exercise of federally guaranteed civil rights.

2.      By this action, COLE-HATCHARD seeks redress for retaliatory actions taken by his employer, the TOWN OF CLARKSTOWN, Defendant. That retaliation has and is threatened to continue and increase to punish COLE-HATCHARD because of his exercise of rights of freedom of speech in his capacity as a private citizen addressing matters of great public concern.

3.      Since 2014, COLE-HATCHARD, a police sergeant employed by the TOWN OF CLARKSTOWN Police Department, has worked on a task force operated jointly by the TOWN OF CLARKSTOWN and Rockland County, New York under the auspices of the District Attorney of Rockland County. Until the current controversy arose, COLE-HATCHARD served as the Special Intelligence Sergeant for the Police Department and Director of the Rockland County Strategic Intelligence Unit, a critical position involving public safety. In retaliation for the exercise of federal constitutional rights, as explained more fully within, COLE-HATCHARD will be permanently removed from his positions as the Special Intelligence Sergeant and the Director of the Special Intelligence Unit. When the retaliation began, COLE-HATCHARD was stripped of those positions and assigned to headquarters duty.

4.      The retaliatory actions of the TOWN OF CLARKSTOWN, GEORGE HOEHMANN, and the TOWN BOARD OF CLARKSTOWN acting as the POLICE COMMISSION OF THE TOWN OF CLARKSTOWN have already irreparably injured COLE-HATCHARD by removing him from the afore-mentioned positions.

5.      As set out more fully within, the specific basis for retaliation against COLE-HATCHARD is founded on COLE-HATCHARD's communications with STEVEN LIEBERMAN, a local news reporter, and with particular respect to COLE-HATCHARD's observations and comments about the reporter's own journalism and research into a campaign donation that benefitted GEORGE HOEHMANN, the TOWN OF CLARKSTOWN Supervisor, in his pursuit of that office in November 2015 in an amount of no less than $96,000.

6.      When GEORGE HOEHMANN and the TOWN BOARD OF CLARKSTOWN concluded that COLE-HATCHARD's speech would not be supportive of their political goals, but would truthfully state matters of public record, the TOWN OF CLARKSTOWN, GEORGE HOEHMANN, and the TOWN BOARD OF CLARKSTOWN in its capacity as the POLICE COMMISSION OF THE TOWN OF CLARKSTOWN took retaliatory, adverse employment action against COLE-HATCHARD.

7.      The Defendants' actions, taken under color of state law, and with knowledge and intent, have already deprived COLE-HATCHARD of his constitutional rights to freedoms of speech, association, and to equal protection under the law, and are threatened to continue to do so unless restrained by ORDER of this Court.

8.      Because the actions of Defendants expressly restrict COLE-HATCHARD's free speech, those actions should be declared unconstitutional, and the TOWN OF CLARKSTOWN, the TOWN BOARD OF CLARKSTOWN and GEORGE HOEHMANN should be enjoined permanently from so violating COLE-HATCHARD's constitutional rights.

9.      GEORGE HOEHMANN, the TOWN BOARD OF CLARKSTOWN and the TOWN OF CLARKSTOWN acted under color of state law, depriving COLE-HATCHARD of rights, privileges, and immunities guaranteed by the United States Constitution and federal law,

and these Defendants should be ordered to make COLE-HATCHARD whole for the wrongs they have inflicted already and that they continue to inflict on him.

## JURISDICTION AND VENUE

10.     All Parties herein reside in, or have a place of business in, the Southern District of New York.

11.     The acts complained of herein occurred in the County of Rockland New York and in the Southern District of New York.

12.     This Court has original jurisdiction over COLE-HATCHARD's action pursuant to United States Constitution, particularly the First, Fourth, Fifth, and Fourteenth Amendments thereto, and pursuant to Title 28 U.S.C. § 1331, Title 28 U.S.C. § 1343, Title 42 U.S.C. § 1983, and Title 42 U.S.C. § 1988.

13.     This Court has jurisdiction over COLE-HATCHARD's request for declaratory relief pursuant to Title 28 U.S.C. §§ 2201 and 2202.

14.     Venue in this District is proper pursuant to Title 28 U.S.C. § 1391(b), because the acts and transactions complained of occurred in, and continue to occur in, this District.

## THE PARTIES

### THE PLAINTIFF

15.     STEPHEN COLE-HATCHARD, the Plaintiff, is a resident of the County of Rockland within the State of New York.

### THE DEFENDANTS

16.     The TOWN OF CLARKSTOWN is a duly constituted New York municipal corporation within the County of Rockland, New York. The TOWN OF CLARKSTOWN has

4

jurisdiction over all Town roads and highways within, and all police and other municipal affairs within, the geographical confines of the Town of Clarkstown.

17.     The TOWN BOARD OF CLARKSTOWN governs the Town of Clarkstown. Ostensibly, the TOWN BOARD OF CLARKSTOWN also serves as the POLICE COMMISSION OF THE TOWN OF CLARKSTOWN.

18.     GEORGE HOEHMANN is the duly elected Supervisor for the TOWN OF CLARKSTOWN. HOEHMANN is sued in his official and individual capacity.

19.      FRANK BORELLI is a duly elected member of the TOWN BOARD OF CLARKSTOWN, and also serves as the Deputy Supervisor for the Town of Clarkstown. BORELLI is sued in his official and individual capacity.

20.     STEPHANIE HAUSNER is a duly elected member of the TOWN BOARD OF CLARKSTOWN. HAUSNER is sued in her official and individual capacity.

21.     JOHN J. NOTO is a duly elected member of the TOWN BOARD OF CLARKSTOWN. NOTO is sued in his official and individual capacity.

22.     ADRIENNE D. CAREY is a duly appointed member of the TOWN BOARD OF CLARKSTOWN. CAREY is sued in her official and individual capacity.

## SIGNIFICANT NONPARTY PERSONS

23.     At all times relevant to this Verified Complaint until July 21, 2016, MICHAEL SULLIVAN was the Chief of Police of the TOWN OF CLARKSTOWN's Police Department. CHIEF SULLIVAN, a Law Enforcement Officer for over 32 years, started his career as a New York City Police Officer, joining the Clarkstown Police Department in 1987.  He was promoted to Sergeant in 1995, Lieutenant in 2000, Captain in 2009 and Chief of Police in 2011.

24.     "OFFICER T" is a former Clarkstown Police Officer separated from service in August 2015, who, on information and belief, donated over $218,000 to certain political campaigns in 2015, including no less than $96,000 to GEORGE HOEHMANN's campaign, in return for a promise by HOEHMANN to reinstate OFFICER T to his position with the Clarkstown Police Department.

25.     THE BONADIO GROUP is a CPA and Consulting Firm operating out of Pittsford, New York, whose Managing Partner is Tom Bonadio. The Bonadio Group has been retained by the TOWN OF CLARKSTOWN to conduct an efficiency study of the Police Department of the TOWN OF CLARKSTOWN.

26.     STEVEN LIEBERMAN is an award winning, outstanding, and well-recognized newspaper reporter covering police, courts, politics, and related topics in the Lower Hudson Valley; LIEBERMAN investigated campaign finance and donations and provided reporting about them for the Rockland County Journal News newspaper.

## ALLEGATIONS OF FACT

### COLE-HATCHARD GENERAL BACKGROUND AND EMPLOYMENT

27.     COLE-HATCHARD has been a law enforcement officer for over 37 years, including over 32 years of service with the Town of Clarkstown Police Department and currently holds the rank of Sergeant.

28.     COLE-HATCHARD is a registered member of the Democratic Party in Rockland County.

29.     COLE-HATCHARD is not of the same Political Party as any of the Defendants, save one.

30.     COLE-HATCHARD is a licensed member of the Bar of the State of New York.

31.     COLE-HATCHARD has held elected office in New York, serving as a member of the Town Board of the Town of Stony Point and as a member of the School Board for the North Rockland Central School District.

32.     COLE-HATCHARD has also served as Town Attorney for the Town of Stony Point.

33.     COLE-HATCHARD has been involved for many years in combating and disclosing public corruption; in pursuit of that goal, COLE-HATCHARD has held numerous public positions, including the elected positions previously mentioned.

## COLE-HATCHARD'S DUTIES AS SPECIAL INTELLIGENCE SERGEANT AND DIRECTOR OF THE SPECIAL INTELLIGENCE UNIT

34.     Throughout his career, COLE-HATCHARD has served in extremely confidential and sensitive positions, including his previous service as a Special Agent with the United States Secret Service, and his current position as Director of the Rockland County Strategic Intelligence Unit ("SIU").

35.     Because of his outstanding personal and professional qualities for integrity and respect for the law, COLE-HATCHARD was selected, from the almost 200 sworn officers comprising the Clarkstown Police Department and the Rockland County District Attorney's Detective Division, to be the Director of the newly created SIU, charged with the task of developing a business plan, and executing that plan from start up to operation.

36.     COLE-HATCHARD's assigned tasks included creating policies, building the Unit's infrastructure, hiring crime analysts, and developing intelligence capabilities and relationships nationwide.

37.     COLE-HATCHARD successfully completed the development and launch of the Intelligence Unit, and until the improper and illegal actions described herein by the Defendants,

supervised the development and distribution of criminal and counter-terrorist intelligence for Rockland County on a National level.

38.     Numerous local, State and Federal law enforcement agencies know and work with COLE-HATCHARD.

39.     COLE-HATCHARD is a valued partner with those local, State, and Federal law enforcement agencies, trusted by them to be a primary point of contact for criminal intelligence purposes.

40.     The general public and law enforcement communities hold COLE-HATCHARD in high regard as an honest, trustworthy and hard-working citizen and law enforcement officer.

41.     COLE-HATCHARD enjoys a particularly positive reputation in the law enforcement community for confidentiality and incorruptibility.

42.     The SIU prepares criminal intelligence work product for numerous local, State, and Federal agencies for the protection of National security, as well as for regional and local counter-terrorist and criminal investigative purposes and is highly confidential law enforcement data.

43.     The TOWN OF CLARKSTOWN Police Department has featured the work and importance of the Special Intelligence Unit in both its 2014 and 2015 Annual Reports.

44.     One primary purpose of the SIU is to develop criminal intelligence regarding persons and groups reasonably believed to be planning, supporting or engaging in terrorist activities including mass shootings, attacks on critical infrastructure, and other acts potentially jeopardizing National and regional security.

45.     The SIU also develops intelligence about criminal activity in the Town of Clarkstown, the County of Rockland, and other areas as requested by partner agencies.

46.     Another main purpose of the SIU is to lead the transition of the Clarkstown Police Department from a traditional "response oriented" police department to a more advanced "Intelligence Led Policing" one.

## ADDITIONAL DUTIES AND RESPONSIBILITIES ASSIGNED TO COLE-HATCHARD BY THE CLARKSTOWN POLICE DEPARTMENT

47.     COLE-HATCHARD has also been assigned numerous other tasks as a member of the Clarkstown Police Department.

48.     After passing the New York Bar Exam, COLE-HATCHARD was assigned the task of establishing the Department's Legal Division and to carry out those duties pursuant to Department General Order 815.

49.     In addition, for many years, COLE-HATCHARD has served as part of the Town of Clarkstown Police Department's Critical Incident Response Team, or "CIRT." The Clarkstown Police Department's CIRT is one of just a handful of such teams throughout New York State to have been certified by the New York State Municipal Police Training Council. COLE-HATCHARD has served as a hostage negotiator for years on the team.

50.     The TOWN OF CLARKSTOWN Police Department has also assigned COLE-HATCHARD the responsibility of communicating with news media on behalf of the Department, and the responsibility for addressing many of the requests for information made to the Police Department pursuant to the New York State Public Officers Law (also known as the Freedom of Information Law).

51.     In that capacity, COLE-HATCHARD has developed a personal relationship with newspaper reporters who consider him to be knowledgeable about non-police matters because of COLE-HATCHARD's previous experiences as an elected official and an attorney, as well as someone who personally has knowledge of New York campaign contribution laws.

52.     COLE-HATCHARD has been performing those duties diligently for over 27 years without issue.

## BACKGROUND ON POLICE DISCIPLINE
## IN THE TOWN OF CLARKSTOWN

53.     As authorized by the Rockland County Police Act, the TOWN BOARD OF CLARKSTOWN purportedly enacted a resolution designating the TOWN BOARD as the POLICE COMMISSION for the CLARKSTOWN POLICE DEPARTMENT.

54.     On February 7, 2012, pursuant to the Rockland County Police Act, the TOWN BOARD OF CLARKSTOWN adopted disciplinary procedures as relating to Police Department employees.

55.     At that time, HOEHMANN served as a councilman and seconded the motion to adopt the resolution; HOEHMANN, BORELLI, and HAUSNER were all present, debated the resolution, and voted in favor of it.

## PRETEXT AND RETALIATION: DISCIPLINING COLE-HATCHARD FOR
## EXPRESSING HIS OPINION ON SUSPECT CAMPAIGN DONATIONS

### THE CASE OF "OFFICER T" SETS THE STAGE:
### TERMINATION AND CAMPAIGN DONATIONS

56.     In August of 2015, after years of litigation, a Clarkstown Police Officer ("Officer T") was terminated from the Town Police Department.

57.     On information and belief, immediately upon Officer T's termination, he vowed to have the then-Town Supervisor defeated in the November 2015 election, and have the new regime remove the Chief of Police "one way or another."

58.     On information and belief, Officer T declared he would have the new Town Board reinstate him to his police position to qualify for a retirement pension valued at approximately $3 million, and taxpayer funded medical benefits for the rest of his life.

59.     On information and belief, Officer T had recently sold a family business for at least $2 million.

60.     On information and belief, with the help of Westchester Attorney and Rockland Republican Committee Chairman Lawrence Garvey, Officer T created, and now controls, an entity known as the "Institute for Municipal Safety Research LLC."

61.     On information and belief, Officer T funded that entity with no less than $218,000.

62.     Around the same time of Officer T's termination, HOEHMANN, who was then an elected member of the TOWN BOARD OF CLARKSTOWN, announced his candidacy for Town Supervisor against the incumbent Supervisor in the November 2015 election as the Republican candidate.

63.     During that campaign, on information and belief, Officer T contributed $218,000 to the campaign accounts of Town Supervisor Candidate Hoehmann, the Rockland County Republican Party, and Westchester County Executive Rob Astorino, and thousands more to the campaigns of Councilmen Borelli and NOTO, and others.

64.     According to public campaign finance records, on October 9, 2015 the Institute contributed $109,000 to two campaign accounts controlled by Westchester County Executive Rob Astorino, known as the N.Y.S. Committee of the Reform Party, and $109,000 to the Rockland County Republican Party, controlled by attorney Lawrence Garvey.

65.     Approximately 10 days later Astorino's Reform Party transferred $96,053 directly to an account entitled "George Hoehmann."

66.     State finance laws limit individual contributions to a Town Supervisor's race to $2,700.

11

67.     According to public records, Officer T made many other contributions directly to the involved officials, including an additional $1,750 to the Rockland County Republican Party, and $2,000 to HOEHMANN's running mate NOTO.

68.     Numerous other tangentially related transactions are reported in these same campaign finance records.

69.     Since Officer T's donations to HOEHMANN, and HOEHMANN's election as Supervisor, HOEHMANN has engaged in clear and continuous patterns of harassing CHIEF SULLIVAN, and of interfering with police operations and public safety efforts, with the apparent intent to force CHIEF SULLIVAN out of office one way or another, including by taking actions against the Chief's law enforcement programs such as the SIU and against COLE-HATCHARD, and for the ultimate purpose of reinstating Officer T for the previously alleged purpose of providing Officer T a publicly funded pension and taxpayer funded medical benefits for life.

### HOEHMANN BEGINS SURVEILLANCE AND REVIEW OF EMAIL COMMUNICATIONS OF COLE-HATCHARD, CHIEF SULLIVAN, AND OTHER HIGH LEVEL POLICE OFFICIALS OF THE TOWN OF CLARKSTOWN

70.     On information and belief, after taking office HOEHMANN instructed a civilian technology employee of the TOWN OF CLARKSTOWN to surreptitiously intercept and download the emails of CHIEF SULLIVAN, COLE-HATCHARD, and other high ranking police officials, for the purpose of ascertaining what, if any, communications have taken place regarding his biggest contributor, Officer T.

71.     HOEHMANN's decision to intercept and review such emails has resulted in civilian employees, with no legitimate law enforcement justification for doing so, accessing and

reviewing confidential law enforcement intelligence products developed by the SIU and CHIEF SULLIVAN.

72.     Such actions clearly risk compromising criminal investigative efforts and regional and National security and counter-terrorism activities.

73.     HOEHMANN's decision to access emails is contrary to sound policy regarding the management of criminal intelligence information systems.

**HOEHMANN DISCOVERS EMAIL COMMUNICATIONS BETWEEN COLE-HATCHARD AND A LOCAL NEWS REPORTER, AND USES THEM AS A PRETEXT TO DISGUISE THE RETALIATORY DISCIPLINE FOR COLE-HATCHARD'S CONSTITUTIONALLY PROTECTED EXPRESSION**

74.     On information and belief, among COLE-HATCHARD's many emails that HOEHMANN and other civilians under his direction reviewed was an email exchange between COLE-HATCHARD and STEVEN LIEBERMAN, a local newspaper reporter, covering a period of time from March 16, 2016, through March 28, 2016.

75.     In substance and in fact, COLE-HATCHARD's email exchange with STEVEN LIEBERMAN, the local news reporter related to public campaign finance records and social media postings and social media chatter that were completely unrelated to COLE-HATCHARD's law enforcement duties, unrelated to Police Department records, and, in fact, unrelated to the TOWN OF CLARKSTOWN Police Department.

76.     Because COLE-HATCHARD was a former elected office holder, with a currently active campaign account, LIEBERMAN sought, as he had done on prior occasions, COLE-HATCHARD's reaction to his interpretation of donations going to HOEHMANN and the Republican Party, as discovered in campaign finance records by the reporter.

77.     In that email exchange, LIEBERMAN described what he found in public campaign financing records relating to HOEHMANN, Westchester County Executive Astorino, TOWN OF CLARKSTOWN Town Board members NOTO and BORELLI, and others.

78.     COLE-HATCHARD was off the clock and at home when the email exchange occurred.

79.     Via email, COLE-HATCHARD expressed his opinion that LIEBERMAN's analysis appeared to be accurate as compared to those public filings and other publicly available information on social media and in social media chatter.

80.     COLE-HATCHARD did not disclose or discuss any confidential information or data related to the Town of Clarkstown Police Department.

81.     In one of the emails, LIEBERMAN asked COLE-HATCHARD about another police officer employed by the TOWN OF CLARKSTOWN, a matter completely unrelated to the campaign finance story on which he was working.

82.     COLE-HATCHARD declined to discuss that matter.

83.     Despite the fact that COLE-HATCHARD never discussed that personnel matter and specifically declined to do so, HOEHMANN and the TOWN BOARD OF CLARKSTOWN adopted that exchange as a pretext for their current and planned actions, actions in fact taken to retaliate against, and to punish COLE-HATCHARD, for providing his personal opinion to LIEBERMAN, a local news reporter, on an important matter of public interest, an opinion he provided in his private capacity.

84.     If allowed, HOEHMAN's actions will irreversibly continue to penalize, stigmatize, and embarrass COLE-HATCHARD in his profession, his community, and personally as well, and continue to chill COLE-HATCHARD in the exercise of his First Amendment rights.

### HOEHMANN AND THE TOWN BOARD OF CLARKSTOWN INSTITUTE
### A PRETEXTUAL INTERNAL INVESTIGATION OF COLE-HATCHARD

85.     On Wednesday morning, June 29, 2016, MICHAEL SULLIVAN, Chief of

Police for the TOWN OF CLARKSTOWN prepared a written Notice of Internal Investigation

at the direction of HOEHMANN and the TOWN BOARD FOR CLARKSTOWN.

86.     The Notice of Internal Investigation was as follows:

"Clarkstown Police Department
Notice of Internal Investigation

To: Sergeant Stephen Cole-Hatchard
Date: June 29, 2016
From: Chief Michael Sullivan
Subject: Filing of Complaint / Allegation

A complaint/allegation was filed against you involving an incident that is to have
occurred sometime between March 27, 2016 and May 18, 2016 concerning the
following:

Complaint / Allegation:

It is alleged that you spoke with a reporter and divulged confidential information
regarding a pending disciplinary matter involving [a Town Police Officer], that
was being investigated by this department without authorization or authority. Said
information was allegedly given to this reporter prior to disciplinary charges
being officially served on the officer.

Complainant: The Clarkstown Town Board, Supervisor George Hoehmann,
Councilman Frank Borelli, Councilwomen Stephanie Hausner, Councilman John
Noto, and Councilwomen Adrienne CAREY.

This incident has been documented as Professional Standards Case Number Al
2016-007. You will be contacted in the near future in reference to the status of
this investigation."

87.     That same morning, June 29, 2016, CHIEF SULLIVAN contacted COLE-

HATCHARD and instructed him to report to his office rather than to the remote location of the

RC-SIU as usual.

88.     Upon his arrival, CHIEF SULLIVAN served COLE-HATCHARD with that "Notice of Internal Investigation."

89.     As stated in the Notice of Internal Investigation, HOEHMANN and the TOWN BOARD instigated the Internal Investigation by accusing COLE-HATCHARD of communicating with a member of the local news media about a pending personnel matter involving another TOWN OF CLARKSTOWN police officer without authorization.

90.     In fact, HOEHMANN, BORELLI, NOTO, CAREY, HAUSNER, and the TOWN BOARD OF CLARKSTOWN instigated their complaint against COLE-HATCHARD for political reasons to prevent disclosure and further dissemination of information about the aforementioned campaign contributions by OFFICER T and otherwise to chill the speech of COLE-HATCHARD and others about said illegal campaign contributions.

91.     CHIEF SULLIVAN then ordered COLE-HATCHARD to report back to the Chief's office at 3:00 pm on June 29, 2016, with counsel and a PBA representative if desired, to be questioned.

92.     That same day, as ordered, COLE-HATCHARD reported back to CHIEF SULLIVAN, accompanied by a PBA representative and a PBA Attorney.

93.     CHIEF SULLIVAN provided "Garrity" warnings to COLE-HATCHARD (Garrity v. New Jersey, 385 U.S. 493 (1967)), and advised him that if he refused to answer questions, or was untruthful, he could be disciplined, up to and including termination of employment.

94.     Based on the complaint by HOEHMANN, BORELLI, NOTO, CAREY, HAUSNER, and the TOWN BOARD OF CLARKSTOWN, CHIEF SULLIVAN asked COLE-

HATCHARD if he had ever had any communication with the media regarding the Clarkstown Police Department.

95.    COLE-HATCHARD truthfully responded in the affirmative.

96.    CHIEF SULLIVAN also asked COLE-HATCHARD if he had ever disclosed any information to anyone, including the media, relating to a disciplinary matter involving a Town Police Officer.

97.    Again COLE-HATCHARD responded truthfully, stating that COLE-HATCHARD did not do so.

98.    COLE-HATCHARD further advised CHIEF SULLIVAN that he was not aware of any facts relating to any disciplinary matters involving the particular Town Police Officer.

99.    At no time, either when he initially reported to CHIEF SULLIVAN or when he returned for the internal investigation interview with CHIEF SULLIVAN was  COLE-HATCHARD advised of or afforded any of the rights or protections set out in the Rockland County Police Act or the TOWN OF CLARKSTOWN Discipline Rules, including rights to compensation if wrongly suspended without pay; to time to prepare for a hearing; to have the proceedings preserved stenographically; to be present during the interrogation of witnesses; to have witnesses cross-examined by counsel; to have the hearing conducted openly so that the public could be aware of the process being applied to him; to compel the attendance of witnesses; to submit documentary and other evidence for the record; and, to seek review on certiorari in the state supreme court.

100.    On information and belief, LIEBERMAN advised CHIEF SULLIVAN that he did not recall any discussion of the matter involving an internal affairs investigation of a Town

Police Officer with COLE-HATCHARD; LIEBERMAN confirmed that fact during an interview with CHIEF SULLIVAN related to the complaint against COLE-HATCHARD.

101.    In fact, at the time of the email exchange between COLE-HATCHARD and the reporter, the TOWN OF CLARKSTOWN could not possess any internal affairs information or investigative records on the incident for COLE-HATCHARD to review or discuss, as such records did not yet exist.

102.    Any claim that disciplinary action inflicted on COLE-HATCHARD relates to COLE-HATCHARD's violation of departmental policies about an ongoing internal investigation is pretextual and, on information and belief, it is known to be pretextual to the Defendants.

103.    HOEHMANN, , BORELLI, NOTO, CAREY, HAUSNER and the TOWN BOARD OF CLARKSTOWN, in retaliatory efforts to chill and otherwise violate COLE-HATCHARD's First Amendment rights, falsely accused COLE-HATCHARD of disclosing information that was not yet in existence.

104.    Upon information and belief, upon learning that the Complaint against COLE-HATCHARD was without foundation and that no evidence of wrongdoing was developed as well as that COLE-HATCHARD had interacted with the media for many years, HOEHMANN responded by sending via email an order to CHIEF SULLIVAN further instructing him about COLE-HATCHARD, and commencing retaliatory actions.

**HOEHMANN AND THE TOWN BOARD OF CLARKSTOWN DECIDE
TO PUNISH COLE-HATCHARD DESPITE THE ABSENCE OF FINDINGS
BY CHIEF SULLIVAN OF ANY BASIS IN FACT
FOR THEIR COMPLAINT AGAINST COLE-HATCHARD**

105.    HOEHMANN's email to CHIEF SULLIVAN contained numerous false and misleading statements, yet was placed in COLE-HATCHARD's Department personnel file, from which COLE-HATCHARD obtained a copy.  The email was dated Friday, July 1, 2016, stating:

18

"Thank you for meeting with the Town Board this week on short notice to discuss this important matter. It is our understanding that you conducted the interview with Sergeant Cole-Hatchard and that you are awaiting additional information before preparing a report on this matter.

You have confirmed that Sgt. Cole-Hatchard is currently assigned to a particularly sensitive position as the Director of the Rockland County Strategic Intelligence Unit with broad access to confidential information. While it would be inappropriate at this time for the Board to receive detailed information regarding the investigation based upon the possibility of disciplinary proceedings, it is our understanding that Sergeant Cole-Hatchard admitted that he sent the email in question to a reporter in response to an inquiry regarding Officer [   ] status. Your investigation may or may not result in formal disciplinary charges against the Sergeant depending on numerous factors to be determined. It is, however, clear that there was an email exchange and a suggestion that the Sergeant and the Reporter would have further dialogue over Officer [   ] status.

This is a grave concern given the sensitive nature of the Unit and undermines our confidence in the same.

After separate consultation with other members of the Town Board who, as you know, serve as the Board of Police Commissioners, it is our position that there is substantial risk to the Town and the Department in leaving Sergeant Cole-Hatchard in his current position. Irrespective of the outcome of your investigation and whether disciplinary action is taken as a result of that investigation, his immediate reassignment today out of the Intelligence Unit to other duties appropriate to his status and rank as a detective sergeant within 20 Maple Avenue is necessary and directed.

Further, given the Board of Police Commissioners concern over a potential breach that may have occurred, Sergeant Cole-Hatchard is not to have any duties that place him in contact with members of the press and media, either direct or indirect.

Please confirm today, in writing to the Town Board, that this has occurred.

If you have any questions regarding this please contact me."

106.    HOEHMANN sent copies of the email to TOWN BOARD members BORELLI,

HAUSNER, NOTO, and CAREY.

107.    As the HOEHMAN directive shows, despite the outcome of the internal affairs

investigation and despite CHIEF SULLIVAN's conclusions about the matter, HOEHMANN,

19

BORELLI, HAUSNER, NOTO, and CAREY, and the TOWN BOARD OF CLARKSTOWN

ordered CHIEF SULLIVAN immediately to: 1) remove COLE-HATCHARD from his position

as the Director of the SIU; 2) remove COLE-HATCHARD from all other assignments and

positions within the Department related to public information and media relations; 3) order

COLE-HATCHARD's return to Clarkstown Police Headquarters; and, 4) issue an order

prohibiting COLE-HATCHARD from having any contact with the media in any form or fashion.

108.    On information and belief, at a "Meet the Supervisor" coffee, HOEHMANN

repeated the false and scurrilous, defamatory accusation from his email that COLE-HATCHARD

presented a substantial risk if allowed to continue to serve in his position as Director of the

Strategic Intelligence Unit; on that occasion, he repeated the remark to an employee of the

Rockland County District Attorney's Office.

109.    On July 4, 2016, COLE-HATCHARD reported to CHIEF SULLIVAN as he was

instructed to do and was assigned to headquarters duty.

110.    Because COLE-HATCHARD has suddenly and unexplainably been removed

from his position, on information and belief, against the wishes of CHIEF SULLIVAN, COLE-

HATCHARD's reputation and career have been irreparably harmed regardless of any future

Court rulings.

111.    On information and belief, the actions of CHIEF SULLIVAN that gave effect to

the demands of HOEHMANN and the other Defendants to discipline were taken by CHIEF

SULLIVAN under duress and against his certain conclusion that the complaint against COLE-

HATCHARD was utterly without merit.

112.    The peremptory demand made by HOEHMANN and the other Defendants, that

CHIEF SULLIVAN discipline COLE-HATCHARD despite the absence of any evidence of

wrong-doing by COLE-HATCHARD, evinces the Defendants' moral culpability, and that

HOEHMANN and the other Defendants were actuated by evil and reprehensible motives.

113.    At the time that HOEHMANN and the other Defendants coerced CHIEF

SULLIVAN to take disciplinary action against COLE-HATCHARD, the right of a public

employee to exercise the constitutionally protected right to freedom of speech, while acting in

their private capacity and in order to address matters of great public importance, was clearly

established in the law.

114.    Despite the clearly established nature of the right jeopardized and injured by

them, HOEHMANN and the other Defendants acted maliciously and with direct disregard for

that clearly established constitutional right of COLE-HATCHARD.

115.    COLE-HATCHARD has labored diligently for decades to establish himself as a

knowledgeable, trustworthy and reliable resource, labor that culminated in his selection as the

Special Intelligence Sergeant for the Police Department and the Director of the SIU. The

discipline imposed by CHIEF SULLIVAN, under the coercion of HOEHMANN and the other

Defendants, has already irreparably damaged his reputation for knowledgeability,

trustworthiness and reliability.

116.    Sudden unexplained removal from a post of great responsibility and sensitivity

without explanation has already worked to undermine and destroy COLE-HATCHARD's careful

and diligent efforts; worse, that sudden removal jeopardizes COLE-HATCHARD's ability to

employ his carefully cultivated reputation for the benefit of the TOWN OF CLARKSTOWN

POLICE DEPARTMENT, for the benefit of the Strategic Intelligence Unit, and for himself.

117.    Nor have HOEHMANN left the matter as unexplained; rather, HOEHMANN

and the other Defendants have deliberately, falsely, and maliciously defamed COLE-

HATCHARD with their unsupportable and mendacious suggestions that COLE-HATCHARD

puts the TOWN OF CLARKSTOWN at risk by continuing in the sensitive post to which he had

been assigned.

118.     As with many other professions, the law enforcement community is small, tight-

knit, and guards itself against those that do not have and maintain character traits of discretion,

sensitivity, and responsibility; as a consequence of HOEHMANN's and the other Defendants'

actions, COLE-HATCHARD's prospects for obtaining employment in law enforcement are

substantially harmed, as are his prospects for marketing his expertise in other markets.

### HOEHMANN AND THE TOWN BOARD REJECTED A DRAFT STUDY ON POLICE EFFICIENCY IN ORDER TO INFLICT FURTHER IRREPARABLE INJURY ON COLE-HATCHARD

119.     In furtherance of the above described actions and conspiracy to punish COLE-

HATCHARD for expressing his personal opinion regarding the allegedly illegal, improper and

corrupt activities of HOEHMANN and THE TOWN BOARD OF CLARKSTOWN, on

information and belief, HOEHMANN and TOWN BOARD OF CLARKSTOWN are and will be

engaging the BONADIO GROUP for additional action against COLE-HATCHARD.

120.     In January, 2016, HOEHMANN announced he was hiring a firm to conduct an

"efficiency study" of the Police Department at a cost of $100,000 to Clarkstown taxpayers.

HOEHMANN and THE TOWN BOARD OF CLARKSTOWN hired THE BONADIO GROUP,

a CPA firm based out of Pittsford, New York.  On information and belief the Bonadio Group had

no experience conducting such a study, and no law enforcement expertise in house.

121.     On information and belief, to provide the appearance of law enforcement

expertise, HOEHMANN and the BONADIO GROUP hired two "consultants" to oversee the law

enforcement end of the study, namely, Westchester County Police Commissioner and Sheriff

GEORGE LONGWORTH, who was appointed to his position in Westchester by County Executive ROBERT ASTORINO, and one of LONGWORTH's employees.

122.    On information and belief, THE BONADIO GROUP prepared an initial draft study on the Clarkstown Police Department, a report that was not unfavorable to the Clarkstown Police Department, and that was, in fact, complimentary to COLE-HATCHARD and his Strategic Intelligence Unit, acknowledging the Unit as engaging in the kinds of activities representing "the future of police work".

123.    HOEHMANN and BORELLI, on information and belief, reviewed and rejected the initial draft study, directing THE BONADIO GROUP to review the draft with LONGWORTH and others to assure it was modified to meet the goals of HOEHMANN and BORELLI.

124.    On information and belief, that report is now being revised, with a number of specific directives, one being to recommend the elimination of at least one "Detective Sergeant" position, which would be COLE-HATCHARD's position as a result of HOEHMANN's July 1, 2016 email.

125.    HOEHMANN, on information and belief, ordered CHIEF SULLIVAN to take action against COLE-HATCHARD solely as a result of COLE-HATCHARD's exercise of constitutional rights in his capacity as a private person and citizen, exhibited when he expressed agreement with an interpretation of certain campaign donations and other publicly available information offered by a local news reporter on a matter in the public domain, unrelated to COLE-HATCHARD's duties as a Clarkstown Police sergeant.

126.    The disciplinary actions described herein have been imposed, and further disciplinary actions are being threatened despite the fact that HOEHMANN was aware that,

although the investigation of the Board's complaint was not completed, no evidence of wrongdoing had been found.

## FALLOUT AGAINST CHIEF SULLIVAN

127.    As further fallout of HOEHMANN's and THE TOWN OF CLARKSTOWN's retaliation against COLE-HATCHARD, CHIEF SULLIVAN was administratively suspended from his position as Chief of Police on the afternoon of July 20, 2016.

128.    HOEHMANN, BORELLI, NOTO, CAREY, HAUSNER and THE TOWN BOARD OF CLARKSTOWN placed CHIEF SULLIVAN on administrative leave or suspension on July 20, 2016, a personnel action that on information and belief was known to OFFICER T and reported to others by OFFICER T nearly a day before the suspension occurred.

129.    The reasons for suspending CHIEF SULLIVAN on July 20, 2016, are pre-textual.

130.    HOEHMANN, BORELLI, NOTO, CAREY, HAUSNER and the TOWN BOARD OF CLARKSTOWN, ostensibly acting as the POLICE COMMISSION OF THE TOWN OF CLARKSTOWN, suspended CHIEF SULLIVAN because he has openly objected to their efforts to reinstate OFFICER T to his police position, in essence, a quid pro quo that would deliver to OFFICER T a $3 million taxpayer funded retirement and medical benefit package in exchange for substantial political campaign donations for the 2015 Town election.

## HOEHMANN AND THE TOWN BOARD ARE PREPARING TO INFLICT ADDITIONAL INJURY UPON COLE-HATCHARD

131.    On information and belief, HOEHMANN, BORELLI, NOTO, CAREY, HAUSNER and the TOWN BOARD OF CLARKSTOWN, ostensibly acting as the POLICE COMMISSION OF THE TOWN OF CLARKSTOWN, are currently and actively engaged in

their unconstitutional efforts to suspend COLE-HATCHARD, without pay, in retaliation for his exercise of constitutionally protected rights of freedom of speech and freedom of association.

132.    On or about July 20, 2016, after administratively suspending CHIEF SULLIVAN, HOEHMANN, BORELLI, NOTO, CAREY, HAUSNER and the TOWN BOARD OF CLARKSTOWN appointed Robert G. Mahon to serve in the role of Acting Chief of Police.

133.    After his appointment as Acting Chief of Police, ACTING CHIEF MAHON informed COLE-HATCHARD that he would re-interview him.

134.    COLE-HATCHARD's constitutional rights are about to fall prey to these efforts.

135.    If COLE-HATCHARD is again suddenly demoted further, or terminated, against the judgment of CHIEF SULLIVAN, COLE-HATCHARD's reputation will be further harmed, and in addition, he will suffer a substantial loss of income.

136.    The aggressive and sudden actions already taken by HOEHMANN together with the other Defendants reflect their concerted efforts to stop further investigation into, or dissemination of information about, campaign donations received from OFFICER T and any subsequent personnel actions taken favoring OFFICER T or punishing COLE-HATCHARD.

## FIRST CLAIM FOR RELIEF:
## VIOLATION OF COLE-HATCHARD'S
## RIGHT TO FREEDOM OF SPEECH

137.    COLE-HATCHARD repeats and realleges paragraphs 1-136 as if fully set forth herein.

138.    COLE-HATCHARD participated in an exchange of emails with STEVEN LIEBERMAN, a local news reporter, in his capacity as a private citizen, a former elected official, and a person currently maintaining an active campaign account.

139.     COLE-HATCHARD's email exchange with a STEVEN LIEBERMAN took place "off the clock."

140.     COLE-HATCHARD's email exchange with LIEBERMAN was not in the nature of an intra-office communication.

141.     COLE-HATCHARD's email exchange with LIEBERMAN, expressing his opinion about questions related to certain campaign finance records that are part of the public domain was not directed to a colleague, a superior, or a subordinate, nor undertaken as part of any of his duties with the TOWN OF CLARKSTOWN Police Department or as Director of the Strategic Intelligence Unit.

142.     COLE-HATCHARD's email exchanges with LIEBERMAN addressed campaign finance and local elections, matters of great public importance.

143.     Upon discovery by HOEHMANN and the other Defendants that COLE-HATCHARD, in his private capacity and off the clock, had exercised his constitutional right to freedom of speech to communicate with STEVEN LIEBERMAN, a local news reporter, about apparent irregularities in donations made to several 2015 campaigns, HOEHMANN and the other Defendants decided to target COLE-HATCHARD for his constitutionally protected exercise of free speech.

144.     The Defendants have acted under the color of law and deliberately used their positions as Town Board members to interfere with COLE-HATCHARD's right to freedom of speech by prohibiting him from having contact with members of the media.  Defendants have willfully and maliciously retaliated against COLE-HATCHARD for his previous exercise of his right to freedom of speech.

26

145.     Defendants have displayed deliberate indifference to COLE-HATCHARD's Constitutional rights, the deprivation of which was a foreseeable consequence of Defendants' conduct.

146.     As a result of the aforesaid wrongful actions, policies and/or customs, the Defendants injured COLE-HATCHARD by depriving him of his rights.

147.     COLE-HATCHARD has no adequate remedy at law for the harm and damage caused by Defendants' violation of his constitutional rights.

148.     Defendants have caused said COLE-HATCHARD to suffer already, and to continue to suffer, irreparable harm, damage, and injury.

149.     Unless the Defendants are enjoined from their conduct, COLE-HATCHARD will continue to suffer the deprivation of his constitutional rights to freedom of speech.

150.     COLE-HATCHARD respectfully requests that the Court grant him relief from the injuries complained of herein, as more particularly stated in the Prayer for Relief.

**SECOND CLAIM FOR RELIEF:**
**VIOLATION OF COLE-HATCHARD'S**
**CONSTITUTIONAL RIGHTS TO DUE PROCESS**

151.     COLE-HATCHARD repeats and realleges paragraphs 1-150 as if fully set forth herein.

152.     COLE-HATCHARD has a liberty and property interest in his employment with the TOWN OF CLARKSTOWN Police Department, and in his position as Director of the RC-SIU.

153.     As to COLE-HATCHARD, Defendants have acted under color of law but in an arbitrary, outrageous, and irrational manner, interfered with his liberty and property interests.

154.     Defendants have displayed deliberate indifference to COLE-HATCHARD's constitutional rights, the deprivation of which was a foreseeable consequence of Defendants' conduct.

155.     As a result of the aforesaid wrongful actions, policies and/or customs, the Defendants not only deprived COLE-HATCHARD of his rights, but injured him.

156.     COLE-HATCHARD has no adequate remedy at law for the harm and damage caused by Defendants' violation of liberty and property interests.

157.     Defendants have caused COLE-HATCHARD to suffer, and to continue to suffer, irreparable harm, damage and injury.

158.     COLE-HATCHARD will continue to so suffer unless the Defendants' conduct as complained herein is permanently enjoined.

159.     COLE-HATCHARD respectfully requests that the Court grant him relief from the injuries complained of herein, as more particularly stated in the Prayer for Relief.

### THIRD CLAIM FOR RELIEF:
### VIOLATION OF COLE-HATCHARD'S
### RIGHT TO FREEDOM OF ASSOCIATION

160.     COLE-HATCHARD repeats and realleges paragraphs 1-159 as if fully set forth herein.

161.     COLE-HATCHARD enjoys, as do all citizens of the United States, the right to form and maintain associations with others, including for the accomplishment of common goals and purposes.

162.     Based on his long record, both in law enforcement, in public office, and in the community generally, the local news reporter sought out COLE-HATCHARD for his informed

opinion and insights on research he has completed related to possible violations or skirtings of New York's campaign finance laws.

163.    COLE-HATCHARD's freedom of association includes the right to associate with others for the purpose of identifying, preventing, and eradicating public corruption in the form of campaign finance law violations.

164.    Defendants' actions deprived and continue to deprive COLE-HATCHARD above-referenced of his right to freedom of association as secured by the First Amendment to the United States Constitution and made applicable to the States by the Fourteenth Amendment.

165.    COLE-HATCHARD has no adequate remedy at law for the harm and damage caused by Defendants' violation of his constitutional rights.

166.    Defendants have caused COLE-HATCHARD to suffer, and to continue to suffer, irreparable harm, damage and injury. COLE-HATCHARD will continue to suffer such damages unless Defendants' actions complained of are permanently enjoined.

167.    COLE-HATCHARD respectfully requests that the Court grant him relief from the injuries complained of herein, as more particularly stated in the Prayer for Relief.

**<u>FOURTH CLAIM FOR RELIEF:</u>**
**<u>VIOLATION OF COLE-HATCHARD'S</u>**
**<u>RIGHT TO EQUAL PROTECTION OF THE LAWS</u>**

168.    COLE-HATCHARD repeats and realleges paragraphs 1-167 as if fully set forth herein.

169.    Defendants' actions deprived and continue to deprive COLE-HATCHARD of his right to equal protection of the laws, as secured by the Fourteenth Amendment, by discriminating against and targeting COLE-HATCHARD for disfavor based upon his refusal to

comply with Defendants' political agenda in a manner which constitute a grave interference with said fundamental rights.

170.    COLE-HATCHARD has no adequate remedy at law for the harm and damage caused by Defendants' violation of his constitutional rights.

171.    Defendants have caused COLE-HATCHARD to suffer, and to continue to suffer, irreparable harm, damage and injury. COLE-HATCHARD will continue to suffer such damages unless Defendants' actions complained of are permanently enjoined.

172.    COLE-HATCHARD respectfully requests that the Court grant him relief from the injuries complained of herein, as more particularly stated in the Prayer for Relief.

## PRAYER FOR RELIEF

**WHEREFORE**, STEPHEN COLE-HATCHARD prays for the following relief against Defendants:

A.        That the Court enter a Declaratory judgment that the Defendants' continued efforts to suppress COLE-HATCHARD's exercise of his rights to freedom of speech, of the press, of association, and of equal protection are retaliatory for his speech activities undertaken in his capacity as a private citizen on matters of public importance and violate the Constitution of the United States;

B.        That the Court enter an ORDER enjoining the Defendants from retaliating against COLE-HATCHARD for his lawful exercise of constitutional rights of speech, press, and association;

C.        That the Court enter an Order granting an award of costs and disbursements, including a reasonable award of attorney fees pursuant to 42 U.S.C. § 1988; and

D.      That the Court enter an Order granting to COLE-HATCHARD an award of
damages, both compensatory and punitive, against the Defendants in an amount to be determined
at trial for the loss of his rights under the First and Fourteenth Amendment to the United States
Constitution.

E.      That the Court enter an Order for Defendants to pay COLE-HATCHARD interest
on his damages, including pre-judgment and post judgment interest, as appropriate, on all
amounts due to Plaintiff as a result of this action.

F.      That the Court grant such other, further and different relief to COLE-
HATCHARD as to this Court deems just, proper and equitable.

## DEMAND FOR JURY

Pursuant to Rule 38 (b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands
a trial by jury in this action on all issues so triable.

Respectfully submitted this 22 day of July, 2016

STEPANOVICH LAW, PLC

John G. Stepanovich (JS8876)
516 Baylor Court
Chesapeake, Virginia 23320
(757)-410-9696

And

Russell M. Yankwitt
Kathy S. Marks
Yankwitt, LLP
140 Grand Street, Suite 501
White Plains, New York 10601
(914) 686-1500
*Attorneys for Plaintiff, Stephen Cole-Hatchard*

31

## VERIFICATION PAGE FOR PLAINTIFF

I, Stephen Cole-Hatchard declare as follows:

1.      I am the plaintiff in the present case.

2.      I have personal knowledge of myself, my activities, and my intentions, regarding those set out in the foregoing Verified Complaint for Declaratory Judgment, Injunctive Relief and Damages; and if called on to testify I would competently testify as to the matters stated herein.

3.      I have personal knowledge of The Town of Clarkstown and the individual Defendants their activities, and their intentions, regarding those set out in the foregoing Verified Complaint for Declaratory Judgment, Injunctive Relief and Damages, and if called on to testify I would competently testify as to the matters stated herein.

4.      I verify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. 28 U.S.C. § 1746.

Executed on this _22_ day of July, 2016

Stephen Cole-Hatchard