UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
STEPHEN COLE-HATCHARD, :
        Plaintiff, :
:
v. :
:
GEORGE HOEHMANN, as Supervisor for the :
Town of Clarkstown, New York, and in his :
individual capacity; :
FRANK BORELLI, as Councilman and Deputy : **OPINION AND ORDER**
Supervisor for the Town of Clarkstown, New :
York, and in his individual capacity; : 16 CV 5900 (VB)
STEPHANIE HAUSNER, as Councilwoman for :
the Town of Clarkstown, New York, and in her :
individual capacity; :
JOHN J. NOTO, as Councilman for the Town of :
Clarkstown, New York, and in his individual :
capacity; :
ADRIENNE D. CAREY, as Councilwoman for :
the Town of Clarkstown, New York, and in her :
individual capacity; :
TOWN OF CLARKSTOWN, NEW YORK; and :
TOWN BOARD OF THE TOWN OF :
CLARKSTOWN, NEW YORK, :
        Defendants. :
----------------------------------------------------------------x

Briccetti, J.:

      Plaintiff Stephen Cole-Hatchard brings this action pursuant to 42 U.S.C. § 1983 and state law against defendants George Hoehmann, town supervisor for the Town of Clarkstown, New York (the "town"); Frank Borelli, the town's deputy supervisor and a member of the town board; town board members Stephanie Hausner, John J. Noto, and Adrienne D. Carey; the town itself; and the town board (the "board"). The amended complaint claims defendants violated plaintiff's

constitutional rights to free speech, due process, free assembly, and equal protection, violated the New York Labor Law,[1] and committed common law defamation against plaintiff.

Before the Court is defendants' motion to dismiss the amended complaint under Rule 12(b)(6). (Doc. #34).

For the following reasons, defendants' motion is GRANTED in part and DENIED in part.

The Court has subject matter jurisdiction under 28 U.S.C. § 1331 and § 1367(a).

**BACKGROUND**

In deciding the pending motion, the Court accepts as true all well-pleaded factual allegations in the amended complaint and draws all reasonable inferences in plaintiff's favor. As noted below, the Court also relies on several documents that are "integral to the complaint." Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (internal quotation omitted).

Plaintiff worked for the Clarkstown Police Department (the "department") for thirty-two years, attaining the rank of detective sergeant. Plaintiff claims defendants stripped him of significant job responsibilities and effectively forced him to resign on September 4, 2016, in retaliation for comments plaintiff made to a reporter about defendants' campaign financing.

In June 2014, plaintiff was "selected" by the Rockland County District Attorney to be the director of the Strategic Intelligence Unit ("SIU") (Am. Compl. ¶ 31), a "very prestigious" position. (Id. 95). The SIU "prepares criminal intelligence work product for numerous local, State, and Federal agencies for the protection of national security, as well as for regional and local counter-terrorist and criminal investigative purposes." (Id. ¶ 32). The SIU's operations

---

[1] Plaintiff concedes his claim under New York Labor Law is now moot. (Pl.'s Br. at 27).

2

address both "terrorist activities" (id. ¶ 34), and "criminal activity in the Town of Clarkstown, the County of Rockland, and other areas as requested by partner agencies." (Id. ¶ 35).

Before the incidents described in the amended complaint, plaintiff's responsibilities within the department also included "communicating with news media on behalf of the [d]epartment, and the responsibility for addressing many of the requests for information made to the [d]epartment pursuant to the New York State Public Officers Law." (Am. Compl. ¶ 37).

From March 16 through March 28, 2016, plaintiff corresponded via email with Steven Lieberman, a local newspaper reporter, regarding a story Lieberman was writing about campaign financing. Plaintiff used his department email address to conduct this correspondence, but claims he was "off the clock and at home when virtually all of the email exchanges occurred." (Am. Compl. ¶ 60). Plaintiff claims this exchange was unrelated to his law enforcement duties.

According to the amended complaint, in October 2015, a terminated Clarkstown police officer made large, illegal donations to the campaigns of Hoehmann, Borelli, Noto, and the Rockland County Republican Party. Allegedly, Lieberman had examined public records and concluded certain donations to Hoehmann and the Republican Party were improper. Plaintiff claims Lieberman asked him via email whether, in his opinion as a former elected official,[2] plaintiff agreed with Lieberman's conclusion. Plaintiff's response indicated he did agree.

On March 28, 2016, Lieberman also asked plaintiff via email about a confidential disciplinary proceeding against a Clarkstown police officer, to whom the parties refer as "Officer P." Lieberman wrote, "Aside: What's up with P[]? Is he out?" (Loomba Decl. Ex. C). Plaintiff responded, "721-0774 Don[']t want an email on that[.]" (Id.). Plaintiff's response included the email signature, "Sgt. Stephen J. Cole-Hatchard, Director, Rockland County Strategic

---

[2] Plaintiff previously held elected positions in a neighboring town and on a school board.

Intelligence Unit, Clarkstown Police Department." (Id.) Plaintiff claims he "declined to discuss that matter" with Lieberman (Am. Compl. ¶ 64) and "did not disclose or discuss any confidential information or data related to the Town of Clarkstown Police Department." (Id. ¶ 62). Plaintiff further asserts he could not have disclosed any such information because, at the time, no internal affairs information or investigative records for the proceeding against Officer P yet existed.

On June 29, 2016, the department's chief, Michael Sullivan, served plaintiff with a written Notice of Internal Investigation, indicating Hoehmann, Borelli, Noto, Carey, Hausner, and the board had accused plaintiff of communicating with a reporter about Officer P's pending disciplinary matter. That afternoon, Chief Sullivan questioned plaintiff about the accusation. Plaintiff admitted he had communicated with the media about the department generally, but denied disclosing any information to anyone about Officer P's disciplinary matter.

On July 1, 2016, Hoehmann sent Chief Sullivan a memorandum, copying Borelli, Hausner, Noto, and Carey, among others. According to the memorandum, it was "clear that there was an email exchange and a suggestion that [Plaintiff] and the Reporter would have further dialogue over [Officer P's] status." (Loomba Decl. Ex. F). The memorandum directed plaintiff's "immediate reassignment today out of the [SIU] to other duties appropriate to his status and rank as a detective sergeant within [department headquarters]" and ordered that plaintiff "is not to have any duties that place him in contact with members of the press and media, either direct or indirect." (Id.). Although the amended complaint claims the memorandum "prohibit[s] [plaintiff] from having any communications with the media in any form or fashion" (Am. Compl. ¶ 88), the memorandum does not mention private communications with media outside of work.

4

Plaintiff alleges defendants used his email exchange regarding Officer P as a pretext for retaliating against plaintiff for his comments to Lieberman about defendants' campaign financing. Plaintiff claims Hoehmann already knew the complaint against plaintiff was "without foundation" when he sent the July 1 memorandum to Chief Sullivan. (Am. Compl. ¶ 85). Plaintiff alleges the July 1 memorandum was nevertheless placed in plaintiff's personnel file and was "reported to news agencies including but not limited to a Facebook page" operated by an entity that supports the "electoral aspirations" of Hoehmann, Borelli, Noto, and Carey. (Id. ¶ 86).

Based on the July 1 memorandum, plaintiff alleges he was "demoted" from the SIU directorship; "stripped of numerous other long-time responsibilities with the Police Department; transferred back to police headquarters with no specific duties given; and prohibited from speaking or communicating with the press 'directly or indirectly.'" (Am. Compl. ¶ 95).

On July 29, 2016, a local newspaper allegedly quoted Hoehmann's chief of staff saying, "When [plaintiff] got caught leaking information about a current officer, he made up a fantastical story about political retribution to cover himself." (Am. Compl. ¶ 155). On August 1, 2016, Hoehmann allegedly went on a Rockland County radio station and said plaintiff had leaked confidential information about another police officer to the media.

In August, the department's internal affairs investigation allegedly exonerated plaintiff of leaking Officer P's confidential information. Defendants received the complete written report from the investigation on August 12, 2016. Plaintiff learned of his exoneration on August 17.

Plaintiff claims defendants continued to make public, false accusations against him. Between August 17 and September 1, 2016, defendants allegedly accused him of "illegal political espionage; illegally surveilling and investigating a judge; illegally surveilling and

5

investigating a sheriff; abusing department owned asse[ts]; racial surveillance; racial profiling; illegally violating intelligence guidelines, including 28 C.F.R. 23; and illegally monitoring civilians expressing a dislike towards police." (Am. Compl. ¶ 99 (internal quotation marks omitted)). Defendants made some of these accusations in counterclaims against plaintiff in a separate lawsuit in which plaintiff was not initially a party. (Ranni Decl. Ex. E). Defendants also allegedly "'leaked' and caused to be published false and defamatory allegations that Plaintiff improperly deleted files while under 'investigation.'" (Am. Compl. ¶ 93).

Plaintiff claims defendants' actions caused him to resign and retire on September 4, 2016.

## DISCUSSION

I.  Legal Standard

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). First, plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. Id. at 678. Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." Id. at 678. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

6

II.     Free Speech Claim

Plaintiff's free speech claim actually contains two different claims.  First, plaintiff claims defendants "interfere[d] with [his] right to freedom of speech by prohibiting him from having contact with members of the media."  (Am. Compl. ¶ 119).  Second, plaintiff claims defendants "retaliated against [him] for his previous exercise of his right to freedom of speech."  (Id.).

A.      Interference with Prospective Speech Claim

Plaintiff does not state a claim for interference with prospective speech.

A plaintiff alleging a violation of his prospective right to free speech must show "either that (1) defendants silenced him or (2) defendants' actions had some actual, non-speculative chilling effect on his speech."  Williams v. Town of Greenburgh, 535 F.3d 71, 78 (2d Cir. 2008) (internal quotations and alterations omitted).  Although a governmental employer "may impose . . . on the speech of its employees[] restraints that would be unconstitutional if applied to the general public," public employees retain the right "to speak on matters of public concern."  Sassone v. Quartararo, 598 F. Supp. 2d 459, 469 (S.D.N.Y. 2009) (quoting City of San Diego v. Roe, 543 U.S. 77, 80 (2004)).  Thus, a public employee plaintiff must additionally show the chilled speech "would have been speech by citizens on a matter of public concern."  Id.

Plaintiff does not plausibly allege defendants' actions silenced him or had an actual chilling effect on his speech with respect to matters of public concern.  The July 1 memorandum is the only action plaintiff alleges defendants took to curb plaintiff's speech.  Moreover, the only matter of public concern about which plaintiff alleges he wishes to speak as a private citizen is defendants' campaign contributions.  But the order removing plaintiff from "duties that place

7

him in contact with members of the press and media, either direct or indirect" (Loomba Decl. Ex. F) did not prevent plaintiff from speaking privately about this matter.[3]

B. Retaliation Claim

Plaintiff does, however, state a plausible First Amendment retaliation claim.

The First Amendment prohibits government officials from subjecting a public employee to retaliatory actions for exercising the employee's free speech rights under the First Amendment. Holley v. Cty. of Orange, 625 F. Supp. 2d 131, 140 (S.D.N.Y. 2009). "To prevail on a First Amendment retaliation claim, a public employee must establish: (1) that the speech at issue was protected, (2) that he suffered an adverse employment action, and (3) that there was a causal connection between the protected speech and the adverse employment action." Diesel v. Town of Lewisboro, 232 F.3d 92, 107 (2d Cir. 2000) (internal quotation omitted).

1. Whether Plaintiff's Speech was Protected

Plaintiff adequately alleges his speech about campaign financing was protected.

"[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." Garcetti v. Ceballos, 547 U.S. 410, 421 (2006). "If the court determines that the [employee] either did not speak as a citizen or did not speak on a matter of public concern, the employee has no First Amendment cause of action based on his or her employer's reaction to the speech." Sousa v. Roque, 578 F.3d 164, 170 (2d Cir. 2009) (internal quotations omitted). A public employee speaks as a citizen if (i) the speech "fall[s] outside of the employee's official responsibilities," and (ii) there is a "civilian

---

[3] Plaintiff's contention that the July 1 memorandum prohibited him "from having any communications with the media in any form or fashion" (Am. Compl. ¶ 88) is not a plausible reading of the memorandum's language.

analogue" to the method of speaking. Matthews v. City of New York, 779 F.3d 167, 173 (2d Cir. 2015) (internal quotation omitted). "Speech has a relevant civilian analogue if it is made through channels available to citizens generally." Id. at 175 (internal quotation omitted).

First, as alleged, plaintiff's speech to Lieberman about defendants' campaign financing was made in his capacity as a private citizen. Plaintiff claims he was giving an opinion as a former elected official experienced in campaign finance issues, not as a representative of the department. The list of plaintiff's official responsibilities in the amended complaint does not include investigating public corruption or violations of campaign finance laws. Although plaintiff's duties did include communicating with the press generally, plaintiff's alleged comments to Lieberman did not address any department matter or investigation; indeed, Lieberman was asking for plaintiff's thoughts about Lieberman's own reporting. Moreover, speaking to a reporter about public documents is a channel available to private citizens. Even if plaintiff's use of his work email favors finding this was public speech, this one fact does not outweigh the allegations suggesting plaintiff was speaking as a private citizen.[4]

Second, plaintiff's speech was on a matter of public concern, because it allegedly concerned illegal campaign financing. "'[P]ublic corruption or wrongdoing' is almost always a

---

[4] Defendants' citation to Wilson v. Poughkeepsie City Sch. Dist., 2015 WL 5474241 (S.D.N.Y. July 8, 2015) is unpersuasive. (Defs.' Reply Br. at 4). In Wilson, unlike here, there were several indicia of plaintiff's official capacity beyond just his use of an official school district letterhead. For example, the letter "refer[red] to [plaintiff's] job title," stated that someone's actions "put the District in a vulnerable position," requested a meeting in plaintiff's office, and invoked plaintiff's "authority as superintendent to reprimand a Board member." Id. at *4. Copies of the letter were also sent to school officials and the Board of Education. Id.

matter of public concern." Murray v. Town of N. Hempstead, 853 F. Supp. 2d 247, 264 (E.D.N.Y. 2012) (quoting Lewis v. Cowen, 165 F.3d 154, 164 (2d Cir. 1999)).[5]

### 2. Whether Plaintiff Suffered an Adverse Employment Action

In the First Amendment retaliation context, employment action is adverse if it "would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." Zelnick v. Fashion Inst. of Tech., 464 F.3d 217, 225 (2d Cir. 2006) (internal quotation omitted). "[W]holesale reassignment of job duties" coupled with changing the "physical location of [the employee's] job" may meet this standard. Hoyt v. Andreucci, 433 F.3d 320, 329 (2d Cir. 2006); accord Kane v. Krebser, 44 F. Supp. 2d 542, 546 (S.D.N.Y. 1999) ("diminution of job responsibilities" or "being given inferior and less desirable work duties" constitute adverse employment action (internal quotations omitted)). So may falsely implicating the employee of criminal activity. Wrobel v. Cty. of Erie, 211 F. App'x 71, 73 (2d Cir. 2007).

Plaintiff alleges defendants' retaliatory actions: (i) cost plaintiff his "very prestigious" SIU directorship; (ii) stripped him of his responsibilities—including his role interacting with the media—without assigning him new ones; (iii) changed the location of his job; and (iv) subjected him to accusations of illegal activity. This sufficiently pleads adverse employment action.

---

[5] The Court is not persuaded by defendants' argument that "[t]he July 1 Memo . . . makes clear that the employment action was taken in response to an e-mail about a disciplinary investigation involving another officer in the Department," which is not a matter of public concern. (Defs.' Br. at 12). At this stage, the Court credits plaintiff's plausible allegation that the July 1 memorandum's stated reason for taking action against plaintiff was a pretext for retaliating against plaintiff for his comments on defendants' campaign financing.

3. Pickering Defense

Defendants argue even if plaintiff has pleaded the elements of a First Amendment retaliation claim,[6] the claim should nevertheless be dismissed on the basis of the "Pickering defense." See Pickering v. Bd. of Educ., 391 U.S. 563 (1968). This defense excuses an adverse employment action if "(1) the employer's prediction of the disruption that such speech will cause is reasonable; (2) the potential for disruption outweighs the value of the speech; and (3) the employer took the adverse employment action not in retaliation for the employee's speech, but because of the potential for disruption." Castine v. Zurlo, 756 F.3d 171, 176 (2d Cir. 2014).

Plaintiff plausibly claims defendants' stated reason for taking action against him—his email about Officer P—was pretextual, and the real reason defendants took action against him was to retaliate for plaintiff's comments about campaign financing. At this stage, the Court is required to accept this allegation as true. Thus, as alleged, the third element of the Pickering defense is not met because defendants "took the adverse employment action [] in retaliation for [plaintiff's] speech" rather than "because of the potential for disruption," Castine v. Zurlo, 756 F.3d at 176.

Accordingly, dismissal of plaintiff's free speech retaliation claim is not warranted.

III. Due Process Claim

Like his free speech claim, plaintiff's due process claim actually contains two different claims: a claim for deprivation of his "property interest in his employment" (Am. Compl. ¶ 127) without procedural due process, and a so-called "stigma-plus" claim for constitutional

---

[6] Defendants do not argue plaintiff fails to allege a causal connection between speech and retaliation. Pleading a three month interval between the speech and the retaliation is sufficient. See Cioffi v. Averill Park Central Sch. Dist. Bd. of Educ., 444 F.3d 158, 168 (2d Cir. 2006).

defamation, see Segal v. City of New York, 459 F.3d 207, 211 (2d Cir. 2006), alleging injury to his reputation plus the deprivation of a tangible "liberty" interest (Am. Compl. ¶ 127).

    A.    Property Interest Claim

To determine whether plaintiff states a claim for deprivation of a property interest without due process, the Court examines (i) whether plaintiff possessed a protected property interest; and (ii) what process plaintiff was due before he could be deprived of that interest. Ciambriello v. Cty. of Nassau, 292 F.3d 307, 313 (2d Cir. 2002).

"Property interests are not created by the Constitution; rather 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.'" Ciambriello v. Cty. of Nassau, 292 F.3d at 313 (quoting Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 577 (1972)). "While state law defines the underlying substantive interest, 'federal constitutional law determines whether that interest rises to the level of a "legitimate claim of entitlement" protected by the Due Process Clause.'" Ezekwo v. New York City Health & Hosps. Corp., 940 F.2d 775, 782 (2d Cir. 1991) (quoting Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 9 (1978)).

Plaintiff pleads no protected property interest in his position as director of the SIU.

Particular positions or ranks in public employment are protected if they would be "protected under state law" and are of "sufficient importance" to the employee. Ciambriello v. Cty. of Nassau, 292 F.3d at 318. "[H]igher pay and greater benefits" weigh in favor of finding sufficient importance. Id. Conversely, although "a governmental employer may specifically create a property interest in a non-economic benefit, such as a particular work assignment," such a non-economic interest is "exceedingly rare" and "plaintiff's expectation of this right cannot be

12

a mere 'abstract need' or expectation." Kane v. Krebser, 44 F. Supp. 2d at 550 (quoting Bd. of Regents of State Colls. v. Roth, 408 U.S. at 577).

Plaintiff has not alleged facts showing his position at the SIU is protected by a state law source, such as the civil service law or a collective bargaining agreement, see Ciambriello v. Cty. of Nassau, 292 F.3d at 313-14, or any other independent source. Although plaintiff characterizes his loss of the position as a demotion, he does not allege he lost his rank as detective sergeant or that his salary or benefits were decreased. Plaintiff also pleads no facts suggesting he had more than a unilateral expectation his position at SIU would continue.

Further, plaintiff does not adequately plead he was deprived of due process when he was allegedly forced to resign from the department on September 4, 2016.

When a public employee resigns, "the only possible dispute is whether the resignation was voluntary or involuntary," which "cannot be determined in advance." Giglio v. Dunn, 732 F.2d 1133, 1135 (2d Cir. 1984). In such a case, "a pre-deprivation hearing is impractical," so a "meaningful" post-deprivation hearing satisfies due process. Id. A plaintiff's "fail[ure] to avail himself of the opportunity" of a post-deprivation hearing is fatal to a due process claim. Id.

In New York, a police officer may bring an Article 78 proceeding, see N.Y. C.P.L.R. § 7801 et seq., to challenge the voluntariness of his resignation. See Stenson v. Kerlikowske, 205 F.3d 1324 (Table), 2000 WL 254048 (2d Cir. Mar. 3, 2000). Plaintiff did not do so. This renders implausible plaintiff's allegation that he was denied due process. See id.

B.  Stigma-Plus Claim

"'Stigma plus' refers to a claim brought for injury to one's reputation (the stigma) coupled with the deprivation of some 'tangible interest' or property right (the plus), without

13

adequate process." DiBlasio v. Novello, 344 F.3d 292, 302 (2d Cir. 2003). "[T]he availability of adequate process defeats a stigma-plus claim." Segal v. City of New York, 459 F.3d at 213.

To establish the "stigma" element of the claim, plaintiff must allege the government made false and defamatory statements that "call into question [his] good name, reputation, honor, or integrity," Quinn v. Syracuse Model Neighborhood Corp., 613 F.2d 438, 446 (2d Cir. 1980) (internal quotation marks omitted), or "impugn [his] professional reputation in such a fashion as to effectively put a significant roadblock in [his] continued ability to practice his . . . profession." Donato v. Plainview-Old Bethpage Cent. Sch. Dist., 96 F.3d 623, 631 (2d Cir. 1996).

The "deleterious effects [flowing] directly from a sullied reputation," including "economic harm," Sadallah v. City of Utica, 383 F.3d 34, 38-39 (2d Cir. 2004), and "the impact that defamation might have on job prospects, or, for that matter, romantic aspirations, friendships, self-esteem, or any other typical consequence of a bad reputation," Valmonte v. Bane, 18 F.3d 992, 1001 (2d Cir. 1994), cannot constitute the "plus." Rather, plaintiff must allege an additional "specific and adverse [state] action clearly restricting [his] liberty—for example, the loss of employment." Velez v. Levy, 401 F.3d 75, 87-88 (2d Cir. 2005).

Plaintiff cannot rely on his resignation from the department for the "plus" because he did not avail himself of an Article 78 proceeding after he resigned. As explained supra Part III.A, plaintiff's resignation rendered a pre-termination hearing impractical. See Giglio v. Dunn, 732 F.2d at 1135. Therefore, plaintiff was only entitled to a post-deprivation hearing. Id. An Article 78 proceeding adequately serves as a "post-deprivation name-clearing hearing[]." Spang v. Katonah-Lewisboro Union Free Sch. Dist., 626 F. Supp. 2d 389, 397 (S.D.N.Y. 2009). Plaintiff's failure to avail himself of this proceeding means he was not denied due process. Id.

None of the other alleged negative effects of defendants' statements, i.e., damage to plaintiff's personal and professional relationships, is sufficient to meet the "plus" element.

Accordingly, plaintiff's due process claim must be dismissed.

IV. Freedom of Association Claim

"To succeed on a First Amendment claim [for retaliation against associational conduct[7]] a plaintiff must be able to demonstrate that (1) the conduct at issue was constitutionally protected, (2) the alleged retaliatory action adversely affected his constitutionally protected conduct, and (3) a causal relationship existed between the constitutionally protected conduct and the retaliatory action." Wrobel v. Cty. of Erie, 692 F.3d 22, 27 (2d Cir. 2012). Plaintiff claims defendants retaliated against him for associating with journalists, Lieberman in particular.

Defendants contend this claim fails because plaintiff has not shown a causal connection between plaintiff's association with journalists and defendants' alleged retaliation.

The Court disagrees.

Plaintiff associated with Lieberman in late March 2016. Defendants' alleged retaliation came in early July. Under the circumstances, a three-month interval is sufficiently close to imply causation. See Cioffi v. Averill Park Central Sch. Dist. Bd. of Educ., 444 F.3d at 168.[8]

---

[7] Based on the amended complaint and plaintiff's brief in opposition to the motion to dismiss, it appears plaintiff's freedom of association claim only encompasses a retaliation claim, and not prospective interference with association. To the extent this claim does encompass prospective interference, it fails for the same reason as does plaintiff's claim for prospective interference with speech—namely, the July 1 memorandum did not bar plaintiff from associating with journalists outside of work. See supra Part II.A.

[8] The Court rejects defendants' argument that plaintiff fails to show causation because plaintiff has associated with journalists for years through his position at the department without retaliation. Regardless of plaintiff's past association with journalists generally, plaintiff's claim here is that defendants retaliated against him for associating with a particular journalist as a private citizen for the purpose of helping the journalist report on defendants' alleged improper campaign financing. These two events are close enough in time to imply causation at this stage.

15

Defendants also raise the Pickering defense in response to this claim. The Court rejects it at this stage for substantially the same reasons explained above. See supra Part II.B.3.

Accordingly, dismissal of plaintiff's free association retaliation claim is not warranted.

V.  Equal Protection Claim

Plaintiff claims his equal protection rights were violated because defendants "targeted [him] for disfavor based upon his refusal to comply with Defendants' political agenda." (Am. Compl. ¶ 144). It is clear, therefore, that plaintiff's equal protection claim is based solely on his being retaliated against for his speech and association with Lieberman.

When an equal protection claim "is based on an alleged First Amendment violation, the former 'coalesces with the latter.'" Tomlins v. Vill. of Wappinger Falls Zoning Bd. of Appeals, 812 F. Supp. 2d 357, 372 (S.D.N.Y. 2011) (quoting Kempkes v. Downey, 2008 WL 852765, at *6 (S.D.N.Y. Mar. 31, 2008)); accord Rankel v. Town of Somers, 999 F. Supp. 2d 527, 544 n.32 (S.D.N.Y. 2014). Such is the case here. Because plaintiff states a claim for First Amendment retaliation, his equal protection claim can proceed on this theory as well. See Verbeek v. Teller, 158 F. Supp. 2d 267, 279 (S.D.N.Y. 2001).[9]

Accordingly, dismissal of plaintiff's equal protection claim is not warranted.

---

[9] Defendants are incorrect that plaintiff's equal protection claim is a "class of one" claim, which is not available to public employees. (Defs.' Br. at 19). A "class of one" claim alleges there is "no rational basis for the difference in treatment" between the plaintiff and "others similarly situated." Analytical Diagnostic Labs, Inc. v. Kusel, 626 F.3d 135, 140 (2d Cir. 2010). Plaintiff does not claim defendants' treatment of him was arbitrary, but rather that it was "based on impermissible considerations such as . . . intent to inhibit or punish the exercise of constitutional rights." Rankel v. Town of Somers, 999 F. Supp. 2d at 544 (quoting Cine SK8, Inc. v. Town of Henrietta, 507 F.3d 778, 790 (2d Cir. 2007)).

16

VI.  Common Law Defamation

Defendants contends plaintiff's failure to file a notice of claim dooms his state common law claim for defamation.

The Court agrees.

"[I]n a federal court, state notice-of-claim statutes apply to state-law claims." Hardy v. N.Y.C. Health & Hosps. Corp., 164 F.3d 789, 793 (2d Cir. 1999). "In New York, filing a [n]otice of [c]laim with a municipality is a condition precedent to commencing a tort claim against any employee of that municipality." Chamberlain v. City of White Plains, 986 F. Supp. 2d 363, 396 (S.D.N.Y. 2013). It is also a condition precedent to commencing a claim against a town. DeCarolis v. Town of Vienna, 322 F. App'x 25, 26 (2d Cir. 2009) (citing N.Y. Town Law 67). "Failure to comply with [notice of claim] requirements ordinarily requires a dismissal for failure to state a cause of action." Hardy v. N.Y.C. Health & Hosps. Corp., 164 F.3d at 794.

Plaintiff does not dispute his failure to file a notice of claim in this case. Rather, he argues he did not have to file a notice of claim because his claims for damages are incidental to the injunctive relief he seeks. However, the amended complaint seeks "an award of damages, both compensatory and punitive, against the Defendant[s] in an amount to be determined at trial for defamation." (Am. Compl. ¶ F). This is more than incidental. Although the amended complaint also states "Defendants and their agents should be ordered to issue corrections of their false statements, and be enjoined from further uttering false statements regarding Plaintiff" (Am. Compl. ¶ 166), the Court is not persuaded this is the primary relief sought. Indeed, the "prayer for relief" does not even mention this proposed injunctive relief.

Accordingly, dismissal of plaintiff's defamation claim is warranted.

VII.  Legislative Immunity

Defendants contend they are entitled to dismissal by reason of legislative immunity.

The Court disagrees.

Legislative immunity only attaches to actions that are "legislative in function," that is, "taken 'in the sphere of legitimate legislative activity.'" Harhay v. Town of Ellington Bd. of Educ., 323 F.3d 206, 210 (2d Cir. 2003) (quoting Bogan v. Scott-Harris, 523 U.S. 44, 54 (1998)). "Discretionary personnel decisions, even if undertaken by public officials who otherwise are entitled to immunity, do not give rise to immunity because such decisionmaking is no different in substance from that which is enjoyed by other actors." Id. at 210-11.

The only action defendants argue was within the sphere of legitimate legislative activity is reassigning plaintiff away from the SIU and changing his duties. This is a discretionary personnel decision, not a legislative action. Nor is it apparent on the face of the complaint that any other of defendants' alleged actions falls within the scope of legislative activity.

Accordingly, dismissal on the basis of legislative immunity is not warranted at this stage.

VIII. Qualified Immunity

The individual defendants argue in the alternative that they are entitled to qualified immunity on plaintiff's remaining § 1983 claims. Qualified immunity shields government officials whose conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The scope of qualified immunity is broad, and it protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). A qualified immunity defense is established where "(a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action

18

did not violate such law." Tierney v. Davidson, 133 F.3d 189, 196 (2d Cir. 1998).

During the time period described in the amended complaint, it was clearly established law that retaliation against a public employee for protected speech violates the Constitution. Moreover, without the benefit of a fuller factual record, the Court cannot conclude any defendant was objectively reasonable to believe his or her actions did not violate such clearly established law.

Accordingly, dismissal on the basis of qualified immunity is not warranted at this stage.

## CONCLUSION

The motion to dismiss is GRANTED as to plaintiff's claims for prospective interference with speech, violation of due process, violation of the New York Labor Law, and common law defamation.

The motion is DENIED as to plaintiff's claims for retaliation against speech and association and violation of equal protection.

By separate order, the Court will schedule an initial conference.

The Clerk is directed to terminate the motion. (Doc. #34).

Dated: September 15, 2017
White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge