# JUNGE & MELE, LLP

ATTORNEYS AND COUNSELORS AT LAW
303 South Broadway
Suite 470
Tarrytown, NY 10591

(212) 269-0061
Fax: (212) 269-0515

Connecticut
600 Summer Street, Suite 201
Stamford, CT 06901
(203) 353-1404

Email: Attorneys@JungeMele.com

New Jersey
599 Avenue C
Bayonne, NJ 07002
(201) 823-1000

Website: http://www.JungeMele.com

December 14, 2018

***Via ECF***
Hon. Paul E. Davison
United States Magistrate Judge
United States Courthouse
300 Quarropas St., Room 420
White Plains, NY 10601

RE:   Stephen J. Cole-Hatchard v. George Hoehmann, *et al.*
        U.S. District Court, Southern District of New York – Case No.: 16-CV-5900 (VB) (PED)

Dear Judge Davison:

We represent the Plaintiff in this proceeding brought under 42 U.S.C. § 1983. We write to request, *inter alia*, that the Court issue a ruling that Defendants' assertion of "executive session" privilege during the non-party deposition of former Clarkstown Board member, Valerie Moldow, was improper. Further, since the Court's ruling will necessarily govern the deposition testimony of the individual party-Defendants, who are all current or former Clarkstown Board members, we respectfully request that the Court rule on the applicability of the privilege in general, and not just as it pertains to the specific questions directed to Ms. Moldow.

Before making this application, I conferred with defense counsel to determine whether Defendants intended to assert an executive session privilege over discussions concerning Plaintiff as well as third parties. I made this inquiry because at Ms. Moldow's deposition, defense counsel asserted, but then immediately withdrew, an objection to a question about whether Plaintiff was the subject of executive sessions she had attended. Despite withdrawing that objection, defense counsel informed me that it is Defendants' position that the privilege should apply even to discussions pertaining to Plaintiff himself.

## I. Defendants' Objections

Ms. Moldow was deposed pursuant to a defense subpoena on November 20, 2018. During the deposition I questioned her about discussions which she and other Board members had in executive session concerning a lawsuit which former Clarkstown Police Sergeant Michael Garvey had commenced against Clarkstown.

Hon. Paul E. Davison, U.S.M.J.          2          December 14, 2018

The reason I pursued this line of inquiry is that Plaintiff intends to prove that he was removed from his position as Director of the Strategic Intelligence Unit and then targeted him for termination because he exercised his constitutional right to speak with a Journal News reporter about more than $200,000 in potentially illicit campaign contributions which Michael Garvey made to the 2015 campaign of George Hoehmann, who was then a candidate for Clarkstown Supervisor. Plaintiff contends that these contributions, which were funneled through a shell corporation with the assistance of Rockland County Republican Chairman and private attorney, Lawrence Garvey, were part of a *quid pro quo* arrangement wherein Mr. Hoehmann was expected to 1) adopt a conciliatory position with regard to Michael Garvey's lawsuit against Clarkstown, and 2) direct that Lawrence Garvey's law firm assume the defense of nearly all the personal injury cases which were then pending against Clarkstown.[1]

Given this background, the following exchange took place at Ms. Moldow's deposition:

> Q. Had you ever discussed Michael Garvey with any of your republican committee members or republican politicians?
>
> A. Well, I was on the Board, so I confidentially discussed the sit - - the case with our Board members.
>
> Q. When you say the case, what are you referring to?
>
> A. The potential lawsuit with Michael Garvey and Clarkstown.
>
> Q. Okay, so –
>
> Mr. Loomba: Just a general caution, if the conversations took place in executive session, you should not disclose that.
>
> The Witness: Okay.
>
> Mr. Mele: I think maybe what we'll do then is, to the extent that I ask a question that your position is that executive session communications are privileged, you can state your objection, we'll mark it for a ruling and move on. Okay?
>
> Mr. Loomba: That's okay.
>
> Q. When you referred to a lawsuit and Mike Garvey, were you referring to a lawsuit that Mike Garvey had brought against the Town of Clarkstown?

---

[1] On December 7, 2018, the Journal News published a story wherein it reported that an investigator for the New York State Board of Elections had written a report recommending that Michael Garvey be criminally prosecuted for his campaign contributions to Mr. Hoehmann.

Hon. Paul E. Davison, U.S.M.J. 3 December 14, 2018

> A. It was confidential discussion in - - in a Board - - with the Board.
>
> Q. Okay. So your taking the position that the answer to the question I just asked you, you're not going to answer it because it's privileged?
>
> A. That's correct.
>
> Mr. Mele: Okay. So we'll note the assertion of privilege, and if you could just mark it for a ruling.

*Deposition of Valerie Moldow, at 57-58.*

> Later in the deposition, the following exchange took place:
>
> Q. I don't want to know what you said at any of those executive sessions, because I know that you are asserting privilege.
> How many of those executive sessions - - at how many of those executive sessions was litigation with Michael Garvey a topic of conversation?
>
> Mr. Loomba: I'm going to object to the form. I don't think she can answer that question without waiving a privilege.
>
> Mr. Mele: I'll rephrase the question.
>
> Q. At any executive session that you attended, six executive sessions while you sat on the Town Board, was Michael Garvey's name raised in an executive session?
>
> Mr. Loomba: Well, that you know. She's already answered that question.
>
> Mr. Mele: Okay.
>
> Mr. Loomba: And at which point I cautioned the witness to assert the privilege, and she has done so. By continuing to ask her, you're running up against the same block. You've already marked it for a ruling, which we can find out what the court does.
>
> Mr. Mele: Okay.
>
> Q. So do you recall discussing Stephen Cole-Hatchard in any executive sessions?
>
> Mr. Loomba: Objection. Well, actually, I'm going to withdraw that objection. You can answer that, yes or no.

Hon. Paul E. Davison, U.S.M.J. 4 December 14, 2018

    A.    I don't recall.

*Deposition of Valerie Moldow, 60-61*

## II. Legal Argument

The burden of establishing each and every element of a privilege rests with the party invoking the privilege. *Alleyne v New York State Educ. Dept*., 248 FRD 383, 386 (N.D.N.Y. 2008), citing *In re County of Erie*, 473 F.3d 413, 418 (2d Cir.2007).

In *Fortunatus v. Clinton County, N.Y.*, the court analyzed the interplay between the right of a Board member to assert an executive session privilege under Public Officers Law § 105, and the right of a plaintiff in federal court to discover and present evidence underlying a federal claim:[2]

> State privileges are not absolute in federal court, especially when a federal question forms the basis for federal jurisdiction. Principally, where the litigation is based upon a federal question, i.e., 42 U.S.C. § 1983, privilege claims are governed by federal rather than state law. von Bulow by Auersperg v. von Bulow, 811 F.2d 136, 141 (2d Cir.1987) (recognizing that in a federal action, "the federal law of privilege controls the question whether the privileges asserted by [a party] should be recognized"); Komlosi v. New York Office of Mental Retardation and Dev. Disabilities, 1992 WL 77544, at *2 (S.D.N.Y. Apr.3, 1992) (noting that New York state law does not govern discoverability and confidentiality in federal civil rights actions); Lizotte v. New York City Health and Hosp. Corp., 1989 WL 260217, at *2 (S.D.N.Y. Nov.28, 1989) ("It obviously would make no sense to permit state law to determine what evidence is discoverable in cases brought pursuant to federal statutes whose central purposes is to protect citizens from abuses of power by state and local authorities."); Van Emrik v. Chemung County Dep't of Social Servs., 121 F.R.D. 22, 24–25 (W.D.N.Y.1988). However, when no federal common law creating a comparable federal privilege exists, the state created privilege may still be considered.
>
> Intuitively then, federal courts are required to engage in the following analysis: "[w]hile as a matter of comity federal courts accord deference to state-created privileges, . . . such privileges are construed narrowly, . . . and must yield when outweighed by a federal interest in presenting relevant information to a trier of fact[.]"

---

[2] In New York, all public meetings are open except for executive sessions, where, "Upon a majority vote of its total membership, taken in an open meeting [and] identifying . . . the subject [matter] to be considered, a public body may conduct an executive session for the below enumerated purposes only, . . . [including] discussion regarding proposed, pending or current litigation." N.Y. PUB. OFF. LAW. §§ 105(1) & (1)(d); *Fortunatus v Clinton County*, *N.Y.*, 2012 WL 4711992, at *5 (N.D.N.Y. Oct. 2, 2012).

Hon. Paul E. Davison                              5                              December 14, 2018

*Fortunatus v Clinton County, N.Y.*, 2012 WL 4711992, at *5-8 (N.D.N.Y. 2012).

a)   <u>Defendants' executive session discussions about Plaintiff are not privileged</u>

The analysis which the courts employ to determine whether a federal interest outweighs a state-created privilege explicitly <u>does not apply</u> when the discussions at issue concern a decision making process which is the "central and pivotal" subject of the litigation. *See Fortunatus, citing Children First Found. Inc., v. Martinez*, 2008 U.S. Dist. LEXIS 120828, at *11, 2008 WL 2557433 (N.D.N.Y. June 20, 2008) (decision making process is central issue in the litigation). As such, any executive session privilege which Defendants would assert over discussions directly concerning Plaintiff being transferred, demoted, or placed on administrative leave, are not privileged. As stated in *Fortunatus*: "Had there been an executive session regarding Fortunatus's effort to have his house reconveyed, this Court would readily agree with him, eschew engaging in any balancing test, and direct that this particular executive session, not Liberty's, be explored during Langley's deposition."

*Fortunatus* at 7.

b)   Any executive session discussions pertaining to either
     <u>Michael Garvey or Lawrence Garvey are not privileged</u>

Where the decision-making process of the municipal entity is collateral or peripheral to the subject matter of the litigation, courts have attempted to balance the interest of the litigants with the government's need to protect frank discussions or the process itself. *Alleyne v. New York State Educ. Dep't*, 248 F.R.D. at 388 n. 2. Here however, the executive session discussions pertaining to either Michael Garvey's lawsuit against Clarkstown or the fact that Lawrence Garvey's law firm assumed the defense of multiple personal injury cases against Clarkstown, are neither collateral nor peripheral. These discussions lie at the heart of Plaintiff's allegation that the adverse employment actions taken against him were in retaliation for him speaking to the press about illicit campaign contributions and what might have been promised in return for those contributions.

Nevertheless, even if the Court were to engage in such a balancing test analysis, the privilege would have to yield to Plaintiff's right to pursue his federal claims. In assessing whether and to what extent the privilege bars disclosure, courts "must balance the extent to which production of the information sought would chill the [government's] deliberations concerning such important matters ... against any other factors favoring disclosure." *Winfield v City of New York,* 2018 WL 716013, at *6 (S.D.N.Y. Feb. 1, 2018). These factors are the following:

(I) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the 'seriousness' of the litigation and the issues involved; (iv) the role of the government in the litigation; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable.

Here, each and every factor strongly favors disclosure:

   -First, the relevance of the executive session discussions concerning Michael Garvey and

Lawrence Garvey cannot be reasonably disputed given that Plaintiff alleges the Defendants retaliated against him for speaking to a reporter about suspicious campaign contributions involving these individuals;

-Second, there is no other evidence available which could possibly shed light on Defendants' motivation and conduct other than the discussions which took place among the Board members behind closed doors;

-Third, the seriousness of the case cannot be overstated in that it involves allegations of public corruption and retaliation against a thirty-year employee for exercising his constitutional right to speak with the media about such corruption;

-Fourth, the government's role in the litigation is central inasmuch as it is alleged that governmental power was abused in attempting to silence and punish an employee for speaking out about public corruption;

- And fifth and finally, there is no threat of fostering future timidity in government employees given the unique factual circumstances involved here: a terminated town employee, who also happens to be a multi-millionaire embroiled in high-stakes litigation with the Town, decides to contribute more than $200,000 to the candidate looking to unseat the incumbent who fired him, and does so by funneling the money through a shell corporation with the assistance of an attorney/party boss, who, after the candidate wins the election, is coincidentally chosen by the new Supervisor to be substituted in as defense counsel in nearly every personal injury case then pending against the Town.

In sum, the executive session privilege was designed to foster candor on the part of government employees pursuing legitimate governmental policies and interests. It was not intended to be used as a cloak to conceal political corruption and constitutional violations from litigants seeking redress for the violation of important federal rights.

Given the above, Plaintiff respectfully requests that the court rule that Defendants' assertion of executive session privilege does not apply in this case regarding discussions concerning the Plaintiff, Michael Garvey, or Lawrence Garvey. We thank the Court for its kind consideration of this application.

Respectfully yours,

JUNGE & MELE, LLP

*s/ Armand P. Mele*

_____
Armand P. Mele

To:  **All counsel of record via ECF**